In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-3165

ANTWON FLINT,

*Petitioner-Appellant,*

*v.*

KEVIN CARR, Secretary of the Wisconsin
Department of Corrections,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:19-cv-00411 — **William C. Griesbach**, *Judge.*

———————————

ARGUED APRIL 22, 2021 — DECIDED AUGUST 19, 2021

———————————

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* The Double Jeopardy Clause of
the Fifth Amendment provides that "No person shall … be
subject for the same offence to be twice put in jeopardy of life
or limb." This constitutional protection prohibits retrial after
an acquittal, but a mistrial declared over a defendant's objec-
tion does not always prevent another prosecution. A

"manifest necessity" for the mistrial allows a retrial for the same crime.

That is what happened to Antwon Flint. In his first trial in Wisconsin state court, the prosecutor moved for a mistrial based on (alleged) hearsay in Flint's counsel's opening statement. The trial court granted that motion, and a jury found Flint guilty at a second trial. Raising double jeopardy, Flint sought relief in the Wisconsin appellate courts; when that failed, he moved for federal postconviction relief. But the district court concluded that Flint failed to overcome the high hurdle for granting habeas imposed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 (AEDPA). According to the district court, the Wisconsin Court of Appeals reasonably applied the Supreme Court's decision in *Arizona v. Washington*, 434 U.S. 497 (1978), which requires great deference to a trial judge's "manifest necessity" determination. So the district court denied Flint's habeas petition.

We agree. Although we have our reservations about whether a mistrial should have been declared, deference to the discretion of a trial judge and to state court judgments requires that we affirm the denial of Flint's habeas petition under § 2254.

**I**

**A**

On July 10, 2012, four men robbed a liquor store in Pleasant Prairie, Wisconsin. Hours later, three of those men also robbed a gas station in Antioch, Illinois. Surveillance video from the liquor store and gas station captured these robberies, and law enforcement eventually identified three of the men as

participating in both: Kenneth Cooper, Cortez Holliman, and Paris Williams. The fourth man remained unidentified.

Five days later, on July 15, 2012, Cooper, Holliman, and Williams committed another robbery in Antioch. A high-speed chase ensued. Holliman and Williams died from the resulting car crash, and Cooper survived. Recovering from serious injuries, Cooper spoke to law enforcement from his hospital bed. When shown a still image from surveillance footage of the liquor store robbery, he remarked: "is it Twon?" An officer then asked who "Twon" was, and Cooper clarified that he was speaking about Antwon Flint. Although Cooper equivocated about whether it was Flint depicted in the still image, he ultimately signed a statement identifying Flint as the fourth man from the liquor store robbery in Pleasant Prairie. Flint denied involvement.

Charged with armed robbery by use of force as a party to the crime, Flint went to trial in Wisconsin state court on June 16, 2014. The prosecutor gave his opening statement and described, among other things, the testimony that Cooper would provide during trial—mainly, his identification of Flint as the fourth man from the liquor store robbery. Identifying Flint "wasn't easy" for Cooper, the prosecutor told the jury, because Cooper "was giving up somebody he had known a long time." Flint's counsel began her opening statement by picking up on the importance of Cooper's testimony. After describing the circumstances of Cooper's hospital bed identification of Flint, she referenced the bond between the two men, stating: "Now, two months after the robbery the police find my client and interview him. My client, thinking that he's being cooperative, talks to them, says, yes, I know Kenneth Cooper; he and I have been childhood friends."

At this point, the prosecutor objected and moved for a mistrial. The reference to what Flint said to the police was inadmissible hearsay, the prosecutor argued, introduced "in an attempt to indicate that he was cooperative and that he was acknowledging things that would be helpful to the defense." So to the prosecutor, that left a mistrial as "[t]he only remedy available to the Court." Flint's counsel disagreed. She contended that a mistrial was inappropriate because multiple witnesses would present evidence of the friendship between Cooper and Flint. But according to the prosecutor, that was beside the point; what mattered was that the jury could believe that Flint made a cooperative gesture to law enforcement. Persuaded, the trial judge granted a mistrial and ruled that the statement was "hearsay" that "obviously could not come in." With that, the trial judge scheduled a new trial date for Flint and released the jury pool.

On September 8, 2014, preparations for Flint's second trial began, but with a different trial judge presiding. Before selecting and swearing a jury, the second trial judge raised the issue of double jeopardy *sua sponte* and inquired about the mistrial declared in the first trial; if a "manifest necessity" had not supported that mistrial, then the protection against double jeopardy would bar a second trial. The prosecutor and Flint's counsel next recounted their arguments about the alleged hearsay from the first trial, although their accounts conflicted.

The second trial judge had a problem: he did not have the transcript of the first trial. Recognizing the difficulty in deciding this issue without it, the second trial judge called the judge from the first trial, whose recollection appeared to favor the prosecutor's account. After the jurors were selected (but before they were sworn), the second trial judge told Flint's

counsel that a transcript would have to be procured to pursue a double jeopardy motion.

That next morning of September 9, 2014, the second trial judge—now with a transcript of the relevant trial portions in hand—found that the statements by Flint's counsel "were sufficient to cause a mistrial at the earlier point in the proceedings." Flint's counsel, the second trial judge noted, asserted that Flint "was trying to be cooperative, which [was] an affirmative statement by the defendant." That affirmative statement went "uncross-examined" and was thus "hearsay," lacking corroboration from other witnesses. Similarly, affirmative statements about Flint's "acquaintanceship with Kenneth Cooper," even with additional corroboration, confirmed the appropriateness of a mistrial because it was "still [Flint] speaking to the jury about it as opposed to others." The second trial judge was therefore "not apprehensive about retrying this case."

After a second trial, a jury found Flint guilty, and he received a sentence of seven years' imprisonment and seven years' supervision. As required under WIS. STAT. § 809.30(2)(h), Flint first moved for postconviction relief in the trial court, raising his double jeopardy claim, among others. That motion failed, and a direct appeal followed.

In an unpublished, per curiam opinion, the Wisconsin Court of Appeals denied Flint relief. Relying on *State v. Mink*, 429 N.W.2d 99, 102–03 (Wis. Ct. App. 1988), that court explained that in Wisconsin, "[i]f the State moves to retry a defendant after a mistrial, the defendant must move for

dismissal on double jeopardy grounds to avoid forfeiture."[1] Because Flint "moved to dismiss the second trial on the sole basis that the State failed to preserve or disclose exculpatory evidence," he forfeited his double jeopardy claim as a result. But Wisconsin law still permits review of forfeited claims as part of the ineffective assistance of counsel framework, *State v. Erickson*, 596 N.W.2d 749, 754–55 (Wis. 1999), so the Wisconsin Court of Appeals addressed Flint's double jeopardy claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a showing that the attorney's performance was both deficient and prejudicial.

Flint failed to satisfy *Strickland*. The Wisconsin Court of Appeals was "satisfied that the trial court properly exercised its discretion" in calling a mistrial, analyzing the manifest necessity standard from *Washington* under *Strickland*'s prejudice prong. Flint, that court held, "assert[ed] an unsupported claim of prejudice from counsel's failure to move for dismissal based on double jeopardy." Although the first trial judge did not expressly consider a curative instruction, "that does not mean he did not consider it." Even then, "that avenue 'will not necessarily remove the risk of bias that may be created by improper argument.'" (quoting *Washington*, 434 U.S. at 513). Recognizing that *Washington* requires great deference to a trial court's discretion, the Wisconsin Court of Appeals concluded that a motion to dismiss on double jeopardy grounds "likely would have failed." The court reasoned that "[a]n attorney is not ineffective for failing to make meritless arguments." And "'a failure to challenge a *correct* trial court ruling cannot

---

[1] The Court of Appeals explained that it "use[d] 'forfeiture,' rather than 'waiver,'" in accordance with *State v. Ndina*, 761 N.W.2d 612, 620 (Wis. Ct. App. 2009).

establish' prejudice." (alteration omitted) (quoting *State v. Ziebart*, 673 N.W.2d 369, 375 (Wis. Ct. App. 2003)).

With his other claims rejected, Flint unsuccessfully petitioned for discretionary review by the Wisconsin Supreme Court.

**B**

Proceeding pro se, Flint petitioned for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. The state moved to dismiss, and the district court appointed counsel. Flint then amended his petition, and the state again moved to dismiss, arguing that procedural default precluded consideration of Flint's double jeopardy claim. That doctrine, in part, precludes a federal court from reaching the merits of a habeas petition when the state court decision rests on an adequate and independent state law ground. *See Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). For the state, Flint's forfeiture of his double jeopardy claim under *Mink* was such a ground.

The district court rejected Flint's contention. According to that court, application of the *Mink* rule here fell under *Lee v. Kemna*, which held that in rare instances the "exorbitant application of a generally sound rule" may render a state ground inadequate to foreclose federal habeas review. 534 U.S. 362, 376 (2002). Still, Flint's habeas petition failed. In a separate order, the district court concluded that the Wisconsin Court of Appeals reasonably applied federal law—here, the Supreme Court's decision in *Washington*—when deciding Flint's double jeopardy claim. Although the district court would not have granted a mistrial had it presided over Flint's first trial, AEDPA's stringent standard required denial of his

habeas petition. Flint received a certificate of appealability, and his case came to this court.[2]

## II

We begin with the threshold issue of procedural default, which we review de novo. *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). The state contends the district court erred when it held that Flint did not procedurally default his double jeopardy claim. To the state, the *Mink* forfeiture rule suffices as an adequate and independent state law ground, precluding our review. Flint disagrees. We are satisfied that procedural default does not bar our consideration of this issue.

Federal habeas courts cannot review state court judgments that rested upon adequate and independent state grounds. *E.g.*, *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). A ground is adequate if it is "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (internal quotation marks omitted). And a ground is independent "if it does not depend on the merits of the petitioner's claim." *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021); *see Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam). As "an important 'corollary' to the exhaustion requirement," *Davila*, 137 S. Ct. at 2064 (quoting *Dretke v. Haley*, 541 U.S. 386, 392 (2004)), the adequate and independent state ground bar ensures a proper respect for comity. "When a federal habeas court releases a

---

[2] The district court granted Flint a certificate of appealability based on his double jeopardy claim but did not mention procedural default. Because we may affirm the denial of habeas relief on any ground in the record, *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993), we nevertheless consider whether Flint has procedurally defaulted his double jeopardy claim. *See Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020), *cert. denied*, No. 20-1233 (U.S. June 21, 2021).

prisoner held pursuant to a state court judgment that rests on an independent and adequate state ground, it renders ineffective the state rule just as completely as if [the Supreme] Court had reversed the state judgment on direct review." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1, 9–15 (2012).

Even still, the Supreme Court said in *Lee* that a "limited category" exists of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." 534 U.S. at 376; *see Walker v. Martin*, 562 U.S. 307, 316 n.4 (2011) (noting same). In *Lee*, a defendant moved unsuccessfully for a continuance during trial after his "alibi witnesses left the courthouse" on the day of their planned testimony. 534 U.S. at 369. The Court held that the state court's application of the formal continuance motion rules was inadequate to bar federal habeas review, so it remanded for reconsideration on the merits. *Id.* at 381–83, 387–88.

"Three considerations, in combination," led the Court to that conclusion in *Lee. Id.* at 381. First, "when the trial judge denied Lee's motion, he stated a reason that could not have been countered by a perfect motion for continuance." *Id.* That "[t]he judge said he could not carry the trial over until the next day because he had to be with his daughter in the hospital" and "that another scheduled trial prevented him from concluding Lee's case on the following business day" were reasons that no perfect motion for a continuance could surmount. *Id.* Second, "no published Missouri decision direct[ed] flawless compliance with" the rules applied "in the unique circumstances [that] case present[ed]—the sudden, unanticipated, and at the time unexplained disappearance of critical,

subpoenaed witnesses on what became the trial's last day." *Id.* at 382 (footnote omitted). Third, "and most important, given the realities of trial, Lee substantially complied with Missouri's key Rule." *Id.* (internal citations and quotation marks omitted). "Under the special circumstances so combined," the Court concluded, "no adequate state-law ground hinder[ed] consideration of Lee's federal claim." *Id.* at 387 (footnote omitted).

Guided by the Court's considerations in *Lee*, we hold that Flint has met that case's high bar. Recall that under *Mink*, a defendant in Wisconsin state court "must move for dismissal on double jeopardy grounds to avoid waiver" when tried again for the same crime. 429 N.W.2d at 102. Applying that rule, the Wisconsin Court of Appeals concluded that Flint's failure to move to dismiss the second trial on double jeopardy grounds meant that he forfeited that argument on direct appeal and triggered review under the ineffective assistance of counsel framework.

At first glance, Flint appears to have procedurally defaulted his double jeopardy claim. "[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). And forfeiture under state law is almost always such a ground. *See Smith v. Winters*, 337 F.3d 935, 937 (7th Cir. 2003).

But under *Lee*'s first consideration, this case is different. The second trial judge raised Flint's double jeopardy issue *sua sponte*. Requiring a formal motion here—orally or in writing—to avoid forfeiture would be unnecessary: there is not

"any indication that formally perfect compliance with" the *Mink* rule "would have changed the trial court's decision." *Lee*, 534 U.S. at 387.[3] True, the second trial judge told Flint's counsel that she would need to procure a transcript to pursue a double jeopardy motion, and it appears she did not. Yet relevant portions of the transcript found their way into the second trial judge's hands. Upon reviewing the excerpts and explaining his reasoning on the merits, that judge "was not apprehensive about retrying this case." The lack of a formal motion under *Mink*, then, does not appear to have affected the outcome of the double jeopardy issue. *See id.* at 381. So the first consideration favors Flint.

As does the second consideration—no published Wisconsin decision directed flawless compliance with the *Mink* rule "in the unique circumstances this case presents." *Lee*, 534 U.S. at 382. We located no published Wisconsin decision applying the rule of *Mink* when a trial court raises double jeopardy on its own. The state can point only to an analogous case citing, though not applying, *Mink* in related, though not similar, circumstances. *See, e.g.*, *State v. Koller*, 635 N.W.2d 838, 852 n.5 (Wis. Ct. App. 2001) (citing *Mink* in a footnote to support holding that a defendant waived his multiplicity objection to the indictment), *holding modified by State v. Schaefer*, 668 N.W.2d 760, 775 (Wis. Ct. App. 2003). That is not enough. To be sure,

---

[3] The state also faults the district court for "incorrectly" assuming that Flint could have moved to dismiss based on double jeopardy grounds "during his second trial." Flint disputes that assertion and responds that, under Wisconsin law, a trial begins when jeopardy attaches, so his hypothetical motion would have been timely had it been filed. We need not decide who has the better of this argument, as Flint's motion is hypothetical. Because the second trial judge addressed that issue *sua sponte*, Flint's failure to file a motion ultimately did not affect the outcome here.

"rarely, if ever, will there be a case whose specific and unique facts have previously been presented to a higher court." *Whitley v. Ercole*, 642 F.3d 278, 290 (2d Cir. 2011) (internal quotation marks omitted). But the "predicament" here—forfeiture of a double jeopardy claim on direct appeal after a trial judge raised it *sua sponte*—closely matches the "predicament" that animated the Court's holding in *Lee*, 534 U.S. at 382. That case's second consideration also favors Flint.

And so does the third. Flint "substantially complied" with the *Mink* rule. *Id.* at 382. Even without a formal double jeopardy motion, Flint's counsel debated the merits of the first trial judge's mistrial declaration once that issue came up in the second trial. As *Lee* counsels, we must take account of the "realities of trial." *Id.* Making Flint's counsel file a formal motion when the trial judge already raised the issue *sua sponte* would elevate form over substance and impose an impractical rigidity upon the inherent fluidity of trial. And because *Lee* instructs that we consider the "purpose" of the rule at issue, *id.* at 387, we also take *Mink* on its own terms. There, the Wisconsin Court of Appeals listed "[t]wo reasons offered by the [Wisconsin Supreme Court] for declining to address" claims like double jeopardy that were first made on appeal: "(1) the availability of a remedy in the trial court by amendment or dismissal of the charges; and (2) a record which fails to provide the appellate court with the informed consideration of the trial judge." *Mink*, 429 N.W.2d at 102 (citing *Maclin v. State*, 284 N.W.2d 661, 665 (Wis. 1979)). To these interests, the state adds two more of its own—creating a better record and preserving judicial resources—furthered by application of the *Mink* rule to Flint's claim. *Cf. Lee*, 534 U.S. at 366.

These are easily dispatched. As for the first purpose of the
*Mink* rule, the remedy of dismissal on double jeopardy
grounds was available to, but rejected by, the second trial
judge. Creation of a record, the latter purpose discussed in
*Mink*, dovetails with the state's contention that a formal mo-
tion would have resulted in a better one. Of course, most legal
issues are better resolved with more deliberation, so this point
is well taken. *Cf. United States v. Nixon*, 901 F.3d 918, 921 (7th
Cir. 2018). But the second trial judge thoroughly explained his
rationale for permitting Flint's retrial, and he did so with tran-
script in hand. We are also unpersuaded by the state's asser-
tion that applying *Mink* to Flint's case saves judicial resources.
If anything, those resources were largely spared, as the
double jeopardy issue arose on the first day of jury selection.
Because that judge raised the issue on his own, substantial
compliance with the rule of *Mink*, and satisfaction of its prin-
cipal purposes, occurred here. *See Lee*, 534 U.S. at 382–86; *cf.
Ndina*, 761 N.W.2d at 620 ("The purpose of the 'forfeiture' rule
is to enable the circuit court to avoid or correct any error with
minimal disruption of the judicial process, eliminating the
need for appeal." (footnote omitted)). *Lee*'s third considera-
tion trends towards Flint.

In sum, Flint has not procedurally defaulted his double
jeopardy claim. Application of *Mink*'s forfeiture rule here is
one of the exceedingly rare cases falling under *Lee*, allowing
us to review Flint's habeas petition.

## III

### A

We turn now to AEDPA. A federal court cannot grant a
state prisoner's habeas petition unless the state court's merits

adjudication "resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphases added). This provision "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In applying AEDPA, we measure a state prisoner's habeas petition against the last reasoned state-court decision on the merits—here, the Wisconsin Court of Appeals' decision denying Flint's direct appeal. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). To grant the petition, we must conclude that the state court unreasonably applied Supreme Court precedent, not our own. *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

According to Flint, AEDPA does not apply here. Its deferential standard of review arises only for claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), which Flint contends did not occur. "An adjudication on the merits," Flint reminds us, "is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005). Because the Wisconsin Court of Appeals treated Flint's forfeited double jeopardy claim as one for ineffective assistance of counsel, Flint claims that court did not render an adjudication on the merits of that double jeopardy claim.

We see it differently. Even though the Wisconsin Court of Appeals resolved Flint's forfeited double jeopardy claim under the ineffective assistance of counsel framework, that court still adjudicated the merits of the claim, concluding it would have failed in its own right. In determining the ambit of AEDPA deference, "[a] judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court … heard and evaluated the evidence and the parties' substantive arguments.'" *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (quoting BLACK'S LAW DICTIONARY 1199 (9th ed. 2009) (emphasis omitted)). But "[i]f a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter," and thus AEDPA deference does not apply. *Id.* at 303; *see Brady v. Pfister*, 711 F.3d 818, 825 (7th Cir. 2013) (explaining same).

Here, resolution of Flint's ineffective assistance of counsel claim turned on the intrinsic right or wrong of his double jeopardy claim, so AEDPA applies. For starters, Flint's double jeopardy claim formed a core part of his argument on appeal, even if it was ultimately reviewed within the *Strickland* framework. In that way, the Wisconsin Court of Appeals heard and evaluated his argument on double jeopardy within *Strickland*'s first prong of prejudice—and it disagreed. That court was "satisfied that the trial court properly exercised its discretion" as to the first trial judge's mistrial declaration, explaining that a correct trial ruling cannot be prejudicial. Put another way, Flint's double jeopardy motion "likely would have failed," and "[a]n attorney is not ineffective for failing to make meritless arguments." Going beyond mere procedure, the Wisconsin Court of Appeals rendered a conclusion as to the merits of Flint's double jeopardy claim. We must accord its decision deference.

This is not to say that a state court's resolution of an ineffective assistance of counsel claim always entails a merits adjudication of the underlying federal constitutional claim. In *Ashburn v. Korte*, it did not. 761 F.3d 741, 751 (7th Cir. 2014) ("This case seems to fit []the scenario in which the presumption [of AEDPA deference] is overcome because the state court, in rejecting Ashburn's ineffective assistance of counsel claim, relied solely on the Illinois Speedy Trial Act and made no mention of the federal constitutional right to a speedy trial."). But in *Murdock v. Dorethy*, it did. 846 F.3d 203, 209 (7th Cir. 2017) ("[R]egardless of whether the Illinois courts analyzed his claim explicitly under the *Strickland* framework or as a standalone suppression issue, Petitioner's claim has been 'adjudicated on the merits' and AEDPA deference applies."). And in *Sturgeon v. Chandler*, it did as well—although that case's posture was a bit murkier. 552 F.3d 604, 612 (7th Cir. 2009) (explaining that "the merits were effectively reached" for a federal due process claim because the state court analyzed another issue—competency to stand trial—with the same standard when resolving petitioner's ineffective assistance claim).

In the end, whether a federal constitutional claim received an adjudication on the merits within a state ineffective assistance of counsel claim turns on the state court's evaluation of the intrinsic right or wrong of that federal claim. The Wisconsin Court of Appeals here concluded that Flint failed *Strickland*'s prejudice prong because his double jeopardy motion would have been meritless. That is an adjudication on the merits under AEDPA, triggering deference.

**B**

With AEDPA deference in mind, we consider the core of Flint's argument in this appeal: that the Wisconsin Court of Appeals unreasonably applied the Supreme Court's decision in *Arizona v. Washington* when adjudicating his double jeopardy claim. *Cf. Bell v. Cone*, 535 U.S. 685, 694 (2002) (explaining that a federal court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case"). The district court denied Flint's petition, and we review that denial de novo. *Kidd v. Gomez*, 2 F.4th 677, 679 (7th Cir. 2021).

Under AEDPA, however, Flint's burden is still a heavy one. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Accordingly, "[w]e must deny the writ if we can posit arguments or theories that could have supported the state court's decision, and if fairminded jurists could disagree about whether those arguments or theories are inconsistent with Supreme Court holdings." *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

In *Washington*, the Supreme Court considered the double jeopardy protection after a mistrial based on an "improper and prejudicial comment" in a defense counsel's opening statement—the same circumstance as here. 434 U.S. at 498. The Court, after detailing the importance of the double jeopardy safeguard, nevertheless confirmed that "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the

accused." *Id.* at 505. Although a defendant possesses a "valued right to have the trial concluded by a particular tribunal," there also exists a "public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* (footnote omitted). To take advantage of that opportunity, a "heavy" burden must be met: "The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.*; *see United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality opinion) ("[M]anifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.").

A "necessity," though, "cannot be interpreted literally." *Washington*, 434 U.S. at 506. Courts must "assume that there are degrees of necessity and [] require a 'high degree' before concluding that a mistrial is appropriate." *Id.* (footnote omitted). In *Washington*, that high degree existed. *Id.* at 516. Even though the Court "recognize[d] that the extent of the possible bias cannot be measured," and "that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions," it nevertheless explained that "the overriding interest in the evenhanded administration of justice requires that [the Court] accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at 511. This conclusion made sense given the "compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation," which included: seeing and hearing jurors during voir dire, possessing familiarity with the evidence and larger

case, and listening to the tone of argument as well as witnessing juror reactions. *Id.* at 513–14. In the end, the trial judge was simply in a better position to make the mistrial determination, so the Court owed deference. *Id.* at 514; *see Renico v. Lett*, 559 U.S. 766, 774 (2010) (reiterating the deferential standard of *Washington* in the context of a deadlocked jury).

But that deference was not, and is not, entirely dispositive. *Washington* cautioned that the "constitutionally protected interest" of a defendant "is inevitably affected by any mistrial decision." 434 U.S. at 514. Therefore, "to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* "[I]f a trial judge acts irrationally or irresponsibly," the Court said, then "his action cannot be condoned." *Id.* In *Washington*, though, the trial judge soundly exercised his discretion, ensuring that "the mistrial order [was] supported by the 'high degree' of necessity which is required in a case of this kind." *Id.* at 516. As a result, the Court deferred.

So too must we defer to the mistrial declaration in this case—especially under AEDPA. The question here "is not whether the trial judge should have declared a mistrial." *Lett*, 559 U.S. at 772. "It is not even whether" its decision would be reversible under "the applicable standard on direct review." *Id.* "The question under AEDPA is instead whether the determination" of the Wisconsin Court of Appeals "was 'an unreasonable application of … clearly established Federal law.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1)). In that sense, our review involves two layers of deference: the first to a trial court judge's mistrial declaration under *Washington*, and the second to a state court judgment under AEDPA. Given this dual

deference, we cannot conclude the Wisconsin Court of Ap-
peals unreasonably applied that case in adjudicating Flint's
double jeopardy claim. *See Yarborough v. Alvarado*, 541 U.S.
652, 664 (2004) ("The more general the rule, the more leeway
courts have in reaching outcomes in case-by-case determina-
tions.").

Start with the deference owed to the mistrial declaration.
In her opening statement, Flint's counsel mentioned that Flint
spoke to police—"thinking that he's being cooperative"—and
tells them that he and Cooper (the initial suspect) were "child-
hood friends." That prompted the prosecutor to object and
move for a mistrial. For the prosecutor, Flint's counsel intro-
duced inadmissible hearsay because indications of coopera-
tiveness with police would be helpful to Flint. The first trial
judge agreed, largely accepting the prosecutor's rationale.
Like the district court, we have some doubt about that conclu-
sion. That first trial judge twice instructed the jurors that
"opening statements are not evidence." A curative instruc-
tion, though not expressly considered, could have mitigated
the prejudicial effect of any hearsay. *Cf. Washington*, 434 U.S.
at 511, 513. And to Flint, his counsel's reference to hearsay on
a tangential matter was not prejudicial.

Yet as the Court did in *Washington*, we begin "from the
premise that defense counsel's comment was improper and
may have affected the impartiality of the jury." *Id.* at 511. The
Wisconsin Court of Appeals' decision, as well as Flint's argu-
ment in that court, make clear that the impropriety of his
counsel's statements was not in dispute under state law. In-
stead, what came under appellate scrutiny was the prejudicial
effect of these statements. Although the first trial judge did
not consider a curative instruction or even other remedial

measures, *Washington* teaches that such actions "will not necessarily remove the risk of bias that may be created by improper argument." *Id.* at 513. So a trial judge "must have the power to declare a mistrial in appropriate cases" because "[t]he interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred." *Id.* Guided by *Washington* and informed by its recognition of "compelling institutional considerations" best understood by a trial judge, we must accord "special respect" to the mistrial declaration in Flint's first trial, so long as it was the result of an exercise of sound discretion. 434 U.S. at 510, 514.

Looking through AEDPA's lens—our second layer of deference—the Wisconsin Court of Appeals reasonably applied *Washington* in concluding that sound discretion was exercised in this case. Two different state trial judges determined that a mistrial was necessary, even if neither mentioned the manifest necessity standard by name. *Cf. id.* at 517 ("The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion." (footnote omitted)). The first trial judge's mistrial rationale may have been brief, but the second trial judge more than made up for it, diligently walking the parties through its reasoning step by step. As in *Washington*, there is no indication that either trial judge "act[ed] irrationally or irresponsibly." *Id.* at 514. What is more, both trial judges here, like the trial judge in *Washington*, "gave both defense counsel and the prosecutor full opportunity to explain their positions on the

propriety of a mistrial." *Id.* at 515–16. At bottom, the Court in *Washington* was "persuaded by the record that the trial judge[s] acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding." *Id.* at 516. We are persuaded the same occurred here.

## IV

*Washington* exudes deference to trial judges, and AEDPA requires deference to state court judgments. Together, those principles resolve this appeal. We AFFIRM the district court's denial of Flint's habeas petition.