In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1567

NATHAN S. BERKMAN,

*Petitioner-Appellant,*

*v.*

FRANK VANIHEL,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-cv-00750 — **Robert L. Miller, Jr.**, *Judge*.

———————————

ARGUED NOVEMBER 12, 2021 — DECIDED MAY 11, 2022

———————————

Before SYKES, *Chief Judge,* RIPPLE, and ST. EVE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Nathaniel Berkman was tried in Indiana state court on first-degree and felony-murder charges for the killing of his drug supplier. The jury acquitted Mr. Berkman on the first-degree murder charge, but could not reach a verdict related to felony murder. A second trial was held at which one of the State's key witnesses, Arlene Timmerman, was declared unavailable due to illness.

Timmerman's testimony from the first trial was read into the record, and the jury convicted Mr. Berkman of felony murder.

Mr. Berkman appealed his conviction, claiming error in the trial court's admission of Ms. Timmerman's testimony. The Court of Appeals of Indiana determined that the trial court did not abuse its discretion in admitting the evidence given that Timmerman was unavailable and that Mr. Berkman had had an opportunity to cross-examine Ms. Timmerman at the first trial. The Indiana Supreme Court denied transfer.

After exhausting state postconviction remedies, Mr. Berkman filed a pro se federal habeas petition in which he maintained that the introduction of Timmerman's testimony violated his Sixth Amendment right to confront witnesses as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004). The district court denied relief but granted Mr. Berkman a certificate of appealability on the question of whether the state appellate court unreasonably applied *Crawford*. Because the Court of Appeals of Indiana did not unreasonably apply *Crawford*, we affirm the district court's denial of habeas relief.

## I

### A.    State Trial Court Proceedings

We recount the facts as set forth by the Court of Appeals of Indiana, which are presumed correct in this habeas proceeding.[1] We supplement as necessary from the transcript of Mr. Berkman's second trial.

----

[1] *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

In August 2008, Mr. Berkman owed $2,000 to his cocaine dealer, Olen Hawkins. On August 30, Mr. Berkman arranged to meet Hawkins in a supermarket parking lot, ostensibly to pay Hawkins for what was owed. Prior to leaving for the meeting, Mr. Berkman told his girlfriend, Arlene Timmerman, with whom he resided, "that [he] was going to leave to obtain money and cocaine[,] and that he had to go by himself."[2]

Mr. Berkman took Timmerman's car to the supermarket parking lot, where he met Hawkins. Mr. Berkman got into Hawkins's car, slit his throat, and took the drugs and money that Hawkins had with him. Mr. Berkman returned to Timmerman's house between 9:30 p.m. and 10:00 p.m. Mr. Berkman explained to Timmerman what had transpired, and Timmerman saw Hawkins's body. "[Mr.] Berkman, Timmerman, and Tanya Sullivan, who was visiting, then smoked crack cocaine in the basement until approximately 1:30 or 2:00 a.m."[3]

At some point during the overnight hours, "[Mr.] Berkman retrieved a knife from the kitchen, held it to Timmerman's neck," and ordered her to the basement.[4] Timmerman managed to escape to the home of a friend. The next morning

---

judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

[2] *Berkman v. State*, 976 N.E.2d 68, 71 (Ind. Ct. App. 2012).

[3] *Id.*

[4] *Id.*

"Timmerman called home, [Mr.] Berkman apologized, and Timmerman returned home."[5]

When Timmerman arrived, Mr. Berkman informed her that he had devised a plan to dispose of Hawkins's body. On the morning of September 2, Mr. Berkman drove Hawkins's car to a field, doused it with gasoline, and set it on fire. Hawkins's car and remains were discovered two months later.

The State of Indiana charged Mr. Berkman with murder and felony murder, and the case proceeded to trial at which Timmerman testified in person. The "jury acquitted [Mr.] Berkman of murder but failed to reach a verdict on the felony murder count."[6]

A second felony-murder trial began on August 30, 2011. The State intended to call Timmerman on the third day of trial, but called Sullivan to testify instead. At the beginning of the fourth day of trial, Timmerman was in the hospital, and so the trial court excused the jury and postponed the trial for several days.[7]

Timmerman appeared to testify the following Tuesday. She had testified for several minutes when the prosecuting attorney realized that Timmerman appeared unwell and asked to approach the witness. When the prosecutor inquired, "Are you okay?" Timmerman responded "No, I'm not."[8]

---

[5] *Id.*

[6] *Id.*

[7] *See* Trial Tr. at 438, 442.

[8] *Id.* at 463.

Timmerman then was escorted to a back room. There, the court made the following inquiries:

> The Court:    … Present is the witness, Ms. Massa, Mr. Marcus [the prosecutor] and Mr. Page [defense counsel], and the court reporter.
>
> Can you kind of tell me what's going on with you right now? What's happening here?
>
> The Witness:    I'm very nauseous. I was in the hospital for–since Wednesday until Saturday and they were testing me for MS. They thought I might have had a seizure, possibly a stroke, and they released me Saturday. I'm sorry, I'm burning up, very nauseous, and I have nothing in my stomach at all.
>
> The Court:    You haven't eaten this morning?
>
> The Witness:    I'm afraid to.
>
> …
>
> The Court:    Can I get you a 7-Up or something like that, a Sprite? You think that might help?
>
> The Witness:    That might help ….
>
> …
>
> The Witness:    I'm just very sick to my stomach. It came on suddenly. It was nothing to do with the questions that Reggie was asking

me. I'm very comfortable answering anything either one of you guys have to ask me.

The Court:          But now can you go back out there and do that? That's the question.

The Witness:       In a few minutes, I felt very nauseous. I thought I was going to throw up.

The Court:          Let's take a few more minutes, get her a 7-Up and see if that settles her stomach down a little bit and see where we go from there.

The Witness:       I'm very sorry. I don't want to delay this. I want to get this done with. It's been delayed long enough due to me being in the hospital and I'm afraid I'm getting another migraine.

The Court:          Okay. All right. Let's get the 7-up and see if that will help you at all. You can go back in that room and sit down and relax and we'll bring you something.

The Witness:       Thank you.

…

… Can I ask you another question? In my purse, I have some Tums in a baggy. Would I be able to get one of those?[9]

Once Timmerman had left the room, the court asked that Timmerman's purse be retrieved so the witness could get the

---

[9] Trial Tr. at 465–68.

Tums. It then continued its discussion with counsel concerning how they should proceed. The court did not believe that it was going to be possible for the witness to continue. It then turned to the governing standard for declaring a witness unavailable. The court and both counsel agreed that the court could declare a witness unavailable if she was either unable to be present or unable to testify; Timmerman fell into the second category.[10]

Back in the courtroom, but after the jury had been excused for an early lunch, the court reiterated its determination: "In chambers, we were on the record and interviewed the witness. I determined at that point in time that she is not going to be able to continue with this trial. I'm declaring her unavailable."[11] Mr. Page then stated that he

> would like to interpose an objection to that being done, the reason being that under *Crawford* [*v. Washington*, 541 U.S. 36 (2004),] and classic confrontational case law, it denies the jury the number one thing they need, and that's an opportunity to see the face-to-face confrontation between the defendant and the witness, and to judge the demeanor of the witness by her appearance and her voice.
>
> I recognize we have a prior trial at which I cross-examined her at length. There may be some things that have been brought up so far that are—they don't go directly to the substance

---

[10] *See id.* at 469–70.

[11] *Id.* at 471–72.

of Mr. Hawkins' death, but they deal with some significant collateral issues.

And the problem with reading the transcript from the previous trial into the record … is that … it doesn't give the jury the opportunity to do the number one thing so many of them say during voir dire they need in order to judge a witness, and that is to observe how they testify.

The last trial testimony was—*she was what I would call successfully cross-examined, successfully impeached on a number of points*. But if one can only but see how she reacted to some of the questions and how she testified, it just doesn't come across in this transcript.

And I think in this particular instance while we've got a witness *who's physically unable to testify today*, I believe there could come a time in the future when she could come available to testify, when she is feeling better, when we do have the opportunity to present her to the jury so that they can see and judge her testimony based on how she testifies.

And therefore, my suggestion is that the time has come for a mistrial altogether.[12]

The court determined, however, that Mr. Page had had a full opportunity to cross-examine Timmerman in the first trial. Because the opportunity to cross-examine was the crux of the

---

[12] *Id.* at 471–73 (emphasis added).

*Crawford* decision, the court determined that the trial would go forward.[13]

Timmerman's testimony from the prior trial was then read aloud to the jury. Following the conclusion of evidence, the jury returned a guilty verdict against Mr. Berkman.

## B. State Appellate Court Proceedings

Mr. Berkman appealed and, among other issues, claimed that the trial court erred in failing to grant a mistrial. Within this argument, he also maintained that the trial court erred in admitting Timmerman's prior testimony. Mr. Berkman began this discussion by noting that granting a mistrial is within the trial court's discretion. Under Indiana law, Mr. Berkman explained, a mistrial was warranted when the defendant is "placed in a position of grave peril to which he should not … [be] subjected."[14] Mr. Berkman continued that one of the "sub-issues involved with the trial court's ruling and subsequent denial of [Mr.] Berkman's motion for mistrial" was that he "was denied his right to confront and cross-examine Timmerman in front of the jury."[15] In presenting his confrontation argument, Mr. Berkman noted that, "for the testimonial hearsay to come in, the declarant must be *unavailable* as well as allowing the defendant to have had a prior opportunity to cross-examine the declarant."[16] He further submitted that "Ind[iana] Evidence Rule 804(a)(4) defines unavailability

---

[13] *See id.* at 473–74.

[14] R.7-3 at 25.

[15] *Id.* at 28.

[16] *Id.* at 30 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).

where a witness is unable to testify because of a then existing physical illness."[17] According to Mr. Berkman, "there ha[d] been no showing that Timmerman was definitely unavailable to testify" due to illness.[18]

In its response, the State argued that "[Mr.] Berkman was not placed in 'grave peril' because the trial court did not abuse its discretion when it admitted Timmerman's prior testimony."[19] It noted that the admission of evidence generally, as well as the decision to admit prior recorded testimony specifically, is "within the sound discretion of the trial court."[20] Turning to the standard of unavailability under Indiana Rule of Evidence 804(a)(4), the State noted that "Timmerman had recently been in the hospital for four days, being treated for a possible stroke or seizure" and that the trial court had concluded that the prospect of Timmerman's testifying "[did]n't even seem possible."[21]

In his reply, Mr. Berkman did not contest the standard for evaluating unavailability—Indiana Rule of Evidence 804(a)(4)—or maintain that the standard for reviewing that determination was something other than an abuse of discretion.[22] Rather, he maintained that there had been an

---

[17] *Id.*

[18] *Id.* at 31.

[19] R.7-4 at 23.

[20] *Id.* at 23, 24.

[21] *Id.* at 24–25 (quoting Trial Tr. at 471).

[22] *See generally* R.70–5 at 10–11.

"inadequate showing of the witness's unavailability" and that his lack of opportunity to cross-examine Timmerman in front of the jury resulted in prejudice.[23]

The Court of Appeals of Indiana rejected Mr. Berkman's argument. It explained:

> Berkman contends that the trial court abused its discretion in declaring Timmerman unavailable. Soon after beginning her testimony, Timmerman indicated that she was "having an issue[,]" and trial was recessed. Tr. p. 463. When questioned by the trial court in chambers, Timmerman said that she was "very nauseous [and] burning up[,]" she was afraid that she might be developing a migraine, and she had "thought [she] was going to throw up." Tr. pp. 466–67. Timmerman also indicated that she had been hospitalized from Wednesday to Saturday of the previous week, she had undergone testing for multiple sclerosis, and hospital personnel believed that she may have had a seizure or "possibly a stroke[.]" Tr. p. 466. After observing the witness, the trial court remarked that "I don't see how we're going to be able to continue with this. I'll get [Timmerman] the [Tums] [she requested], but it doesn't even seem possible to me." Tr. p. 468.

---

[23] *Id.* at 11–12.

Under the circumstances of this case, we cannot conclude that the trial court abused its discretion in declaring Timmerman unavailable. The trial court questioned Timmerman, who complained of nausea and felt that she might be developing a migraine. Timmerman also indicated that she had very recently been hospitalized for four days, with medical personnel suspecting MS, seizure, or stroke as the cause of her symptoms. Most importantly, the trial court personally interviewed Timmerman and was able to observe her behavior, demeanor, and appearance, something we cannot do. Berkman has failed to establish that the trial court abused its discretion in declaring Timmerman unavailable due to present illness.

…

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" … Berkman argues that his right to confront witnesses against him was violated by the admission of Timmerman's prior testimony.

It is well-settled that the admission of prior testimony is constitutional provided certain requirements are met.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court

> held that the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person.
>
> *Fowler v. State*, 829 N.E.2d 459, 464 (Ind. 2005). … As we have discussed, the trial court did not abuse its discretion in declaring Timmerman unavailable, and there is no dispute that Berkman cross-examined Timmerman during her prior testimony. Berkman's rights to confront the witnesses against him were not violated.[24]

Mr. Berkman petitioned for transfer to the Indiana Supreme Court, which was denied.

Mr. Berkman then filed a petition for state post-conviction relief, which was denied after an evidentiary hearing. The Court of Appeals of Indiana affirmed, and the Indiana Supreme Court denied transfer.

## C. District Court Proceedings

Mr. Berkman filed a federal habeas petition in which he raised, among other challenges, a claim that his Sixth Amendment right to confront witnesses was violated by the admission of Timmerman's testimony. In reviewing this claim, the

---

[24] *Berkman*, 976 N.E.2d at 75–76 (cleaned up).

district court noted that its review was limited by 28 U.S.C. § 2254(d). As interpreted by this court, § 2254(d) requires that "[a] petitioner … show that the state court's ruling on the claim … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."[25]

The district court determined that this standard had not been met. It noted that, by the time of the second trial, Mr. Berkman "had been in pretrial detention for nearly two years."[26] He had "sought to be released on bond prior to the second trial"; however, the state trial judge denied the request making it "clear that she intended to move the trial proceedings along as swiftly as possible."[27] The district court then recounted the events and discussion that took place in the trial court immediately after Timmerman left the stand. It observed:

> Nothing in this record suggests that Ms. Timmerman was feigning illness or trying to avoid testifying, and the prosecution made a good-faith effort to secure her presence. Still, Mr. Berkman thinks the judge should have done more before declaring Ms. Timmerman unavailable, including waiting longer to see if Ms. Timmerman might recover. In Mr. Berkman's view,

---

[25] *Berkman v. Warden*, No. 3:19-CV-750-RLM-MGG, 2021 WL 826556, at *3 (N.D. Ind. Mar. 4, 2021) (quoting *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020)).

[26] *Id.* at *6.

[27] *Id.*

her problems would likely have cleared up within a matter of a few minutes. Maybe so, but the record also supports the conclusion that Ms. Timmerman's problems were far more serious, as she said she almost vomited on the stand and thought she was getting a migraine. Ms. Timmerman had a history of migraines that caused her to see flashing lights and other visual disturbances. She had only been recently released from the hospital and was undergoing testing for potentially serious medical conditions. Federal habeas relief is not available merely because a court with the benefit of comfortable hindsight can envision other steps that might have been taken to secure a witness's live testimony before declaring her unavailable.[28]

The district court noted that state trial court could "have waited additional time before declaring Ms. Timmerman unavailable"; however, that likely would have resulted in "serious disruption to the court calendar and the schedules of jurors, witnesses, and lawyers. By the same token, the judge might have been reluctant to further delay the trial indefinitely, or declare another mistrial, in hopes that Ms. Timmerman would recover enough to testify."[29] Because the state trial court could have reached two reasonable but competing conclusions, the district court concluded that it must defer to the

---

[28] *Id.* at *7 (citation omitted).

[29] *Id.*

state trial court's choice.[30] Moreover, the district court noted, Ms. Berkman's counsel had had an opportunity to vigorously cross-examine Timmerman in the first trial.

The district court also concluded that, even if there had been a Confrontation Clause violation, the error did not result in prejudice. Applying *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the court acknowledged that "Timmerman's testimony was critical to the state's case," but noted "other evidence corroborated her account."[31] Among the corroborating evidence was that the police had recovered a cell phone from the roof of the supermarket where, according to Timmerman's testimony, Mr. Berkman had told her he threw the phone "to get rid of it."[32] "Timmerman was also able to direct police to the exact location where Mr. Hawkins's body was recovered."[33] Furthermore, much of Timmerman's testimony was corroborated by the prior testimony of Paul Berraza, and by the live testimony of Tanya Sullivan, Megan Johnson, and Shawn Black. Additionally, Mr. Berkman had taken the stand in his own defense and admitted at least some of the events covered in Timmerman's testimony: He "admitted meeting Mr. Hawkins that night in the parking lot of the WiseWay, and to calling Mr. Hawkins on a pay phone to set up the meeting, even though he had a cell phone with him at the time."[34]

---

[30] *See id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[31] *Id.* at *8.

[32] *Id.*

[33] *Id.*

[34] *Id.* at *9.

He also "had no clear explanation for why he was gone several hours, as recounted by Ms. Timmerman, Ms. Sullivan, and Ms. Johnston."[35] Although "[h]e denied killing Mr. Hawkins, … [he] had no explanation as to why he appeared upset and agitated to witnesses when he returned home, or why he made a statement to Ms. Sullivan about having 'hurt somebody really bad.'"[36] Finally, "Mr. Berkman offered shifting and contradictory explanations to police when he was initially brought in for questioning."[37] For these reasons, the court concluded, "Mr. Berkman ha[d] not established actual prejudice, even assuming the state court's resolution of his confrontation clause claim involving Ms. Timmerman's testimony was erroneous."[38]

The district court granted Mr. Berkman a certificate of appealability with respect to the question of whether the state court unreasonably applied *Crawford*.

## II

On habeas review, this court, like the district court, reviews the state court's decision according to the standards set forth in the Anti-Terrorism and Effective Death Penalty Act:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at *10.

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard was intended to be "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Indeed, a state court decision can be reasonable even if we believe "it is an incorrect application of Supreme Court precedent," *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (citing *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017)), "if the result is clearly erroneous," *id.* (citing *White v. Woodall*, 572 U.S. 415, 419 (2014)), or if the petitioner has "a strong case for relief," *id.* (quoting *Harrington*, 562 U.S. at 102).

Moreover, as § 2254(d) makes clear, Supreme Court precedent provides the standard against which the reasonableness of the state court's action is measured. The Supreme Court has stated unequivocally, and on more than one occasion, that "clearly established law as determined by this Court 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). It does not include reasonable extensions of those holdings in circuit precedent. *See Glebe v.*

*Frost*, 574 U.S. 21, 24 (2014) (per curiam) (restating that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" and rejecting the argument that circuit precedent could "help … determine what law is 'clearly established'" (cleaned up)).

With this standard in mind, we turn to Mr. Berkman's contentions.

**A**.

Mr. Berkman contends that the state appellate court's decision was contrary to or unreasonably applied *Crawford* in three ways; none of these contentions are persuasive. First, according to Mr. Berkman, *Crawford* imposes a continuing duty on the trial court to evaluate a witness's availability.[39] As applied in his case, this duty placed a burden on the trial court to reevaluate Timmerman's condition after the early-lunch recess to determine if her condition had improved to the point that she was able to testify. The trial court's failure to do so, Mr. Berkman continues, violated *Crawford*, and the state appellate court's failure to recognize this error was unreasonable.

Mr. Berkman's sole support for his continuing-duty argument is a decision from our court, *Burns v. Clusen*, 798 F.2d 931 (7th Cir. 1986), which is not sufficient to meet his burden under § 2254(d)(1). As we noted earlier, "[t]o grant the petition, we must conclude that the state court unreasonably applied Supreme Court precedent, not our own." *Flint v. Carr*,

---

[39] *See* Appellant's Br. 10 (citing *Burns v. Clusen*, 798 F.2d 931, 943 (7th Cir. 1986)).

10 F.4th 786, 796 (7th Cir. 2021) (citing *Glebe*, 574 U.S. at 24). Having failed to come forward with any clearly established Supreme Court precedent that has imposed such a duty on the trial court, we must conclude that Mr. Berkman has not met his burden under AEDPA.[40]

## B.

Mr. Berkman also maintains that the state appellate court ran afoul of *Crawford* because it "did not address the state's burden in proving that Timmerman was unavailable."[41] There is no question that burden rests on the party seeking to declare the witness unavailable, here the prosecution. *See Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980), *overruled on other grounds by Crawford*, 541 U.S. 36.

---

[40] Even if *Burns* provided a basis by which to evaluate the state court's opinion, we would not conclude that the state court's determination was unreasonable. In *Burns*, the victim, L.L., was in a psychiatric hospital in early September 1980. However, the State did not file a motion seeking to have her declared unavailable until December of that year. At that point, the testifying physician had not seen L.L. for three weeks. Moreover, the trial court did not rule on the motion until January 1981, and the trial began in March 1981. *See Burns*, 798 F.2d at 938. Thus, at the time of trial, there were "[n]o findings on the basis of up-to-date evidence … with respect to the witness' physical or mental conditions." *Id.* at 939. Here, by contrast, just a few hours separated the trial court's determination that Timmerman was physically unable to testify and the reading of Timmerman's testimony to the jury. *Burns* simply provides no basis for concluding that the trial court relied on stale evidence when it admitted Timmerman's prior testimony.

[41] Appellant's Br. 12.

Although couched in terms of reasonableness,[42] Mr. Berkman's argument does not fall neatly within the "unreasonable application" language of § 2254(d)(1). As we have explained, "[a] state court 'unreasonably applies' clearly established Supreme Court decisions when it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular [petitioner's] case.'" *Burgess v. Watters*, 467 F.3d 676, 681 (7th Cir. 2006) (alteration in original) (quoting *Laxton v. Bartow*, 421 F.3d 565, 570 (7th Cir. 2005)). Rather, Mr. Berkman appears to be arguing that the state appellate court's decision was "contrary to" established Supreme Court precedent because it failed to quote or cite Supreme Court precedent for the proposition that the prosecution bears the burden of proof. The Supreme Court, however, refused to impose such a requirement on state courts. In *Early v. Packer*, 537 U.S. 3 (2002), the Supreme Court stated:

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Avoiding these pitfalls does not require citation of our cases—indeed, it does not even require awareness of

---

[42] *See* Appellant's Br. 12–13 ("In evaluating Berkman's *Crawford* claim, the Indiana Court of Appeals did not address the state's burden in proving that Timmerman was unavailable. Instead, the Indiana Court of Appeals merely held that the trial court did not abuse its discretion in finding that Timmerman was unavailable. Therefore, the Indiana courts unreasonably applied clearly established federal law." (internal citation omitted)).

> our cases, so long as neither the reasoning nor
> the result of the state-court decision contradicts
> them.

*Id.* at 8 (quoting *Williams*, 529 U.S. at 405–06).

Here, neither the reasoning nor the result of the state appellate court's decision contradicts Supreme Court precedent, nor suggests that the prosecution failed to meet its burden of proof. Timmerman initially was unavailable to testify because she was hospitalized. The trial court postponed the trial for several days to allow her the opportunity to recover. The record is clear that the state trial judge, the prosecutor, and defense counsel all realized there was a possibility that Timmerman may not be well enough to testify when the trial resumed. In anticipation of this possibility, the court had instructed counsel to confer about the transcript of her prior testimony that would be read to the jury. Furthermore, when the trial resumed, the judge and both counsel witnessed firsthand the physical distress that Timmerman was suffering and agreed that Timmerman, although physically present, was unable to continue with her testimony; defense counsel even acknowledged on the record that "*we've got a witness who's physically unable to testify today.*"[43] Thus, given this consensus as to Timmerman's status, there was no reason for either the state trial court or the state appellate court to address the prosecution's burden of proof.[44]

---

[43] Trial Tr. at 473 (emphasis added).

[44] Mr. Berkman does not argue in this court that his confrontation rights were violated by the trial court's failure to postpone the trial for a second

## C.

Finally, Mr. Berkman contends that the state appellate court's application of *Crawford* was unreasonable because it only evaluated whether the trial court had "abuse[d] its discretion in finding that Timmerman was unavailable" instead of applying de novo review required for constitutional issues.[45] According to Mr. Berkman, this shows that the state appellate court did not understand that he was raising a constitutional question, and, consequently, it did not subject the trial court's decision to the more searching review required for constitutional issues.[46]

We cannot accept this argument. First, we cannot fault the state appellate court for addressing the issues as Mr. Berkman framed them in his brief. On his direct appeal, Mr. Berkman submitted that Indiana Rule of Evidence 804(a)(4) provided the definition of unavailability. In its response, the State noted that a trial court's evidentiary rulings are reviewed for an

---

time, nor does he claim that he did not have an adequate opportunity to cross-examine Timmerman in the first trial.

[45] *See* Appellant's Br. 12–13. The argument in Mr. Berkman's opening brief concerning standard of review, even when viewed generously, is cursory at best. We caution counsel that waiting to develop an argument until the reply brief risks forfeiture of that argument. *See, e.g.*, *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 996 F.3d 354, 365 n.52 (7th Cir. 2021). The requirement that an argument is raised and developed in the opening brief "ensures that the opposing party has an opportunity to reflect upon and respond in writing to the arguments that his adversary is raising." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). Moreover, it ensures that the issues have been distilled and fully joined so that the court can reach an informed decision in an efficient manner.

[46] *See* Reply Br. 2–3.

abuse of discretion. In his reply brief to the state appellate court, Mr. Berkman did not contest this standard of review or maintain, as he does in this appeal, that a different standard of review should apply. In response to the parties' arguments, the Court of Appeals of Indiana addressed the issue of *unavailability* according to Indiana Rule of Evidence 804(a)(4) and employed the standard attendant to a determination of admissibility under the Indiana Rules of Evidence.[47] However, regarding the ultimate question of whether Mr. Berkman's right to confront witnesses under the federal constitution was violated, the state appellate court both drew upon the *Crawford* standard and conducted its own review.[48]

Looking beyond his failure to alert the state appellate court to what he now claims is the appropriate standard of review, the central legal flaw in Mr. Berkman's argument is that he has not directed us to any Supreme Court case that sets forth a standard of review for a finding that a witness is unavailable. Indeed, although the Supreme Court has acknowledged cases in which witnesses have been declared unavailable due to physical or mental illness, *see Motes v. United States*, 178 U.S. 458, 473–74 (1900), it has not given any substantive guidance for how courts should determine whether a witness may be declared unavailable due to illness, much less the standard of review to be applied in reviewing a trial court's determination of unavailability. As "the Supreme Court has 'never addressed' a case like this one—factually or legally— … we cannot brand the state-court decision

---

[47] *See Berkman*, 976 N.E.2d at 75.

[48] *See id.* at 75–76.

unreasonable." *Schmidt*, 911 F.3d at 478 (quoting *Carey v. Musladin*, 549 U.S. 70, 76 (2006)).

We acknowledge that in *Burns* we concluded that "unavailability" was a "mixed question of law and fact" and therefore subject to more searching review than the one employed by the state appellate court here. However, as we already have noted, "[t]o grant the petition, we must conclude that the state court unreasonably applied Supreme Court precedent, not our own." *Flint*, 10 F.4th at 796 (citing *Glebe*, 574 U.S. at 24).

Moreover, even if the standard that we articulated in *Burns* were a standard definitively articulated in Supreme Court cases as the governing standard, we could not conclude that the state court's application of that standard was unreasonable in this case. In the mine run of cases, a trial court is called upon to assess the reasonableness of the prosecution's efforts to procure a witness, specifically whether those efforts were sufficient and whether they were undertaken in good faith. *See generally Roberts*, 448 U.S. at 74. In such a case, the "determination on 'unavailability' goes beyond assessments of credibility and demeanor." *Burns*, 798 F.2d at 941. Here, by contrast, Timmerman's attendance had been procured, but she had a sudden onset of illness that affected her ability to testify. The issue of unavailability therefore was tied directly to Timmerman's physical condition, demeanor, and credibility, which, as we noted in *Burns*, are assessments "best made in the trial court and not properly ignored by courts of appeals." *Id*. Therefore, we could not conclude that the state appellate court unreasonably applied that standard when it deferred to the state trial court's assessment of Timmerman's unavailability under the circumstances presented here.

Because the Supreme Court has articulated neither a substantive standard governing unavailability arising from a witness's illness, nor a standard of review governing a trial court's determination of unavailability, we cannot conclude that the state appellate court's decision was unreasonable.[49]

## Conclusion

Here, the state trial court determined that Timmerman was unavailable to testify based on her documented physical illness. At that time, no one disputed her inability to testify. The state trial court further determined that Timmerman had been subjected to a full cross-examination by Mr. Berkman's attorney during his first trial. It therefore concluded that

---

[49] In his reply brief, Mr. Berkman maintains that the state appellate court decision not only unreasonably applied the law, but also "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* Reply Br. 3 (quoting 28 U.S.C. § 2254(d)(2)). Even if this argument had been preserved in his opening brief, *see supra* note 45, it would be meritless. "A state court's factual determinations are presumed correct, and the petitioner must rebut that presumption by clear and convincing evidence." *Cal v. Garnett*, 991 F.3d 843, 849 (7th Cir. 2021) (citing 28 U.S.C. § 2254(e)(1)). Mr. Berkman does not acknowledge this standard, much less satisfy it. Our own review of the record reveals that the state appellate court fairly summarized the events that transpired in the state trial court. It recognized that the state trial court was in a superior position to assess Timmerman's ability to testify. *See Berkman*, 976 N.E.2d at 75. Mr. Berkman has come forward with nothing to convince us that the state appellate court's ruling "omitted, mischaracterized, or unjustifiably minimized critical evidence." Reply Br. 3. Consequently, there is no basis for granting relief under § 2254(d)(2).

Because Mr. Berkman has not established a constitutional error, we have no occasion to consider whether that error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

*Crawford* did not prohibit the admission of Timmerman's prior testimony. Relying on *Crawford*, the state appellate court affirmed. Neither the reasoning employed by the state appellate court nor the result it reached is contrary to or unreasonably applies established Supreme Court law. We therefore affirm the district court's denial of Mr. Berkman's petition for habeas.

AFFIRMED