In the

# United States Court of Appeals

### For the Seventh Circuit

No. 19-1396

ELIJAH REID,

*Plaintiff-Appellant,*

*v.*

MARC BALOTA, Correctional Officer,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:16-cv-01378-JBM-JEH — **Joe Billy McDade**, *Judge.*

ARGUED APRIL 28, 2020 — DECIDED JUNE 16, 2020

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Elijah Reid, an inmate in the Illinois prison system, brought this action under 42 U.S.C. § 1983 against a correctional officer. He alleged that the officer used excessive force against him in violation of the Eighth Amendment of the Constitution of the United States as made

applicable to the States by the Fourteenth Amendment.[1] The district court dismissed the action, concluding that Mr. Reid had not exhausted the prison's administrative remedies before filing the lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). We now conclude that the prison's communications were so obscure that they made further steps of its administrative process unknowable and, thus, unavailable to Mr. Reid. We therefore vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## I.

## BACKGROUND

### A. Facts

We present the facts in the light most favorable to Mr. Reid. *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015). In his complaint, Mr. Reid, who adheres to a vegan diet for religious reasons, alleged that when he told Officer Marc Balota that he had been given the wrong meal, the Officer reacted by slamming a fist full of keys against one of Mr. Reid's hands, breaking it. Officer Balota told Mr. Reid, who is African-American, "you [are] going [to] get w[hat] the f*** I give you n****r."[2]

Mr. Reid complained about this treatment through the prison's grievance process. According to the version of the Illinois Administrative Code in effect at the time, that process has three steps: (1) the inmate submits a grievance to a

---

[1] *See Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981) (internal citation omitted).

[2] R.31-2 at 1.

counselor and grievance officer; (2) the grievance officer tenders a report and recommendation to the warden, who "shall advise the offender of the decision in writing within two months after receipt of the written grievance, where reasonably feasible under the circumstances"; and (3) if unsatisfied with the warden's decision, the inmate may appeal to the Administrative Review Board by providing copies of the grievance officer's report and the warden's decision. ILL. ADMIN. CODE tit. 20, §§ 504.810, 504.830(d), 504.850. Alternatively, when there is a risk of imminent or irreparable harm, an inmate may "request a grievance be handled on an emergency basis by forwarding the grievance directly" to the warden. *Id.* § 504.840.

On the day of the incident, July 28, 2016, Mr. Reid filed two grievances. He filed a "standard grievance" (i.e., the first of the three steps) with the prison's grievance officer, who logged it as having been received on August 2. He also filed a copy of this grievance with the warden on an emergency basis, the alternative step when a situation involves a risk of imminent or irreparable harm.

On August 9, Mr. Reid received a communication about each of his grievances. The warden returned the emergency grievance with a checked-box response stating that "an emergency is not substantiated [and Mr. Reid] should submit this grievance in the normal manner."[3] Mr. Reid also received a memorandum, which the grievance officer had completed on a stock form. On the memorandum, the grievance officer checked the box to indicate that she was returning the grievance to Mr. Reid because the "issue has been

---

[3] R.31-2 at 4.

received on 8/02/16. No justification for further considera-
tion."[4] She added two notations, writing that the "[i]ssue
[had been] previously submitted to Internal Affairs for re-
view" and "[r]esponse pending per I.A."[5]

Mr. Reid submitted an appeal to the Administrative Re-
view Board on August 15. He attached both the grievance
officer's memorandum and the returned emergency griev-
ance. The Board returned the appeal to Mr. Reid, stating
that, in order to appeal, he should have provided two specif-
ic documents—a copy of his standard grievance, including
the counselor's response, if available, and the "Doc. 0047"
form, which the warden issues and which sets forth the re-
sponses of the grievance officer and the warden. The Board
did *not* check the box that stated, "Please return the attached
grievance or correspondence with the additional information
requested."[6]

On August 24, Mr. Reid filed with the warden a second
emergency grievance. In it, he repeated his allegations
against Officer Balota and protested that no one had re-
sponded to the standard grievance he previously had sub-
mitted. Without ruling on the merits of the grievance, the
warden again denied that there was any emergency.

Three weeks later, on September 15, the Board returned
Mr. Reid's subsequent appeal. The Board, once again, in-
structed Mr. Reid that to appeal, he needed to attach his
standard grievance and a Doc. 0047 form bearing responses

---

[4] *Id.* at 7.

[5] *Id.*

[6] *Id.* at 8.

from both the grievance officer and warden. As before, the Board did not check the box that directed Mr. Reid to "return the attached … correspondence with the additional information requested."[7] The Board added a note informing Mr. Reid that "if [he had] not forwarded [his] grievance to … grievance officer, [his] grievance [would] be considered untimely."[8]

**B. Procedural History**

In October 2016, Mr. Reid brought this action against Officer Balota and several other prison officials. Because Mr. Reid is a prisoner, the district court screened his complaint under 28 U.S.C. § 1915A and dismissed it for failing to state a claim upon which relief could be granted. Mr. Reid appealed, and we vacated the dismissal of his Eighth Amendment claim against Officer Balota on the ground that Mr. Reid stated a claim by alleging that the officer had inflicted pain without any penological justification. *Reid v. Melvin*, 695 F. App'x 982, 984 (7th Cir. 2017) (unpublished).

On remand, Officer Balota moved for summary judgment. He asserted the affirmative defense that Mr. Reid had failed to exhaust the prison's administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Mr. Reid, through counsel, countered that administrative remedies were unavailable because the absence of any response from the grievance officer and warden prevented him from completing the administrative process.

---

[7] *Id.* at 3.

[8] *Id.*

The district court entered summary judgment for Officer Balota, ruling that Mr. Reid had failed to exhaust his administrative remedies. Regarding the standard grievance, the court explained that the prison had responded to it through the grievance officer's memorandum, but Mr. Reid "abandoned any further efforts at exhaustion" because it was "not clear whether he included this [memorandum] in his appeal to the [Administrative Review Board]."[9] The court also determined that Mr. Reid, who filed suit "only nine weeks after submitt[ing] the standard … grievance," acted too soon because an Internal Affairs "investigation was pending," and the warden had "two months to make a decision" after receiving a recommendation from the grievance officer.[10] As for the emergency grievances, the court ruled that the Board gave Mr. Reid "an opportunity to exhaust" when it told him to attach specific documents to his appeal, and he "failed to take advantage" of that procedure.[11]

Mr. Reid filed a motion to alter the judgment under Federal Rule of Civil Procedure 59(e). He argued that (1) he attempted to appeal the grievance officer's memorandum, but the Administrative Review Board returned that appeal to him as insufficient because it did not include a Doc. 0047 form with the grievance officer's and the warden's respons-

---

[9] R.37 at 3.

[10] *Id.* at 5–6. Illinois law provides that the warden should respond to a written grievance within two months "after receipt of the written grievance." ILL. ADMIN. CODE tit. 20, § 504.830(d). The district court misstated the deadline as arising two months from the grievance officer's recommendation.

[11] *Id.* at 8 (internal quotation marks omitted) (internal citations omitted).

es; and (2) he was prevented from moving forward in the administrative process by the warden's failure to communicate a final decision about his standard grievance—a response that should have appeared on a Doc. 0047 form. The district court denied the motion, reiterating that Mr. Reid did not wait long enough for the warden to respond. This appeal followed.

## II.

## DISCUSSION

The sole issue before us is whether Mr. Reid exhausted the prison's available administrative remedies before bringing this action. Specifically, we must consider whether any further administrative avenue was open to Mr. Reid, given the prison's confusing responses and its failure to resolve his standard grievance. Because exhaustion is an affirmative defense, Officer Balota bears the burden to show that remedies were available and that Mr. Reid failed to use them. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). We review de novo the grant of summary judgment for failure to exhaust. *Id.*

The Prison Litigation Reform Act prohibits an inmate from suing over prison conditions under § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

The exhaustion requirement, however, "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is,

must exhaust available remedies, but need not exhaust una-vailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original). An administrative scheme can be "unavailable" to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (internal quotation marks omitted). An administrative scheme also can be "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. Mere ambiguity might not make the administrative process unavailable; "[w]hen an administrative process is susceptible of multiple reasonable interpretations, … the inmate should err on the side of exhaustion." *Id.* But if "no ordinary prisoner can make sense of what it demands," the process is "unknowable" and thus unavailable. *Id.* (internal quotation marks omitted).

Recently, in *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828 (7th Cir. 2020), we emphasized the importance of clear administrative schemes for processing prison grievances. "Grievance procedures must be transparent. This helps everyone: the institution is better able to investigate and resolve grievances if they are presented under a well-understood system, and inmates are better able to comply with institutional expectations if the rules are clear." *Id.* at 834. In *Williams*, an Illinois prisoner appealed the denial of his emergency grievance, and the Administrative Review Board returned the appeal in the same manner it did Mr. Reid's: the Board checked the box stating that the appeal was missing specific documents, but not the one stating that the prisoner should resubmit the appeal with those documents. We concluded that the prisoner, who did not resub-

mit the appeal (or file a new standard grievance) had exhausted the remedies that were available to him. *Id.*

In the present case, we conclude that the prison's responses so obscured the process that there was no conceivable next step for Mr. Reid to take. First, the grievance officer's memorandum gave him conflicting messages—that there was "[n]o justification for further consideration" of his issue *and* that the issue had been "submitted to Internal Affairs for review."[12] Yet Mr. Reid "err[ed] on the side of exhaustion"—as required of a prisoner who receives an ambiguous response to his grievance—and appealed that memorandum to the Administrative Review Board. *Ross*, 136 S. Ct. at 1859.

When he did so, the Board's response further obscured the next steps Mr. Reid was supposed to take. The Board told him that his appeal was missing specific documents but, like the Board in *Williams*, did not check the box specifying that those documents needed to be provided or that some explanation needed to be given for their absence. If, as Officer Balota contends, exhaustion required that Mr. Reid explain to the Board why certain documents were missing from his appeal, nothing in the record shows that Mr. Reid could have known about that requirement. *See Williams*, 957 F.3d at 833–34 (holding that an Illinois prisoner exhausted "all the steps the prison offer[ed]" when the Board returned the appeal as insufficient but did not check the box directing the prisoner to provide missing documents).

---

12 R.31-2 at 7.

Even so, Mr. Reid submitted yet another grievance via the only channel that had drawn a response from the prison. He filed an emergency grievance, this time explaining that no one had responded to his standard grievance. When the warden and the Administrative Review Board returned that grievance to him, neither mentioned a pending standard grievance or an ongoing Internal Affairs investigation. Based on those responses, it would have been impossible for Mr. Reid to know whether the grievance officer was still processing his standard grievance. Confusing matters further, the Board told Mr. Reid that if he had not yet submitted a grievance through the normal channels, any newly submitted grievance would be considered untimely. That directive ignored the substance of Mr. Reid's grievance, which complained about the handling of his previously filed standard grievance. It also conveyed to Mr. Reid that no further step was available to him: his appeals had been returned to him, he was told not to file a new grievance, and—as far as he could tell—his standard grievance had been either lost in the shuffle or resolved against him.

Officer Balota submits that Mr. Reid simply did not wait long enough for the warden to respond to his standard grievance. He relies on *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004), in which we ruled that a grievance process with a similar aspirational timeline—there, it was sixty days, "whenever possible"—does not necessarily trigger an inmate's right to sue once that period had passed. Because the regulation governing Mr. Reid's process, ILL. ADMIN. CODE tit. 20, § 504.830(d), stipulates that the warden must respond "within 2 months … where reasonably feasible," Officer Balota argues that Mr. Reid needed to give the grievance officer (and, relatedly, the warden) more than two

months to review the merits of his grievance and provide her recommendation.

However, unlike *Ford*, in which the inmate sued upon the passage of the "aspirational" deadline despite knowing that the prison was investigating his appeal, 362 F.3d at 400, Mr. Reid had no reason to believe that anyone was looking into his grievance. As we have already discussed, the responses from the Administrative Review Board suggested that no one was. In any case, Officer Balota cannot overcome the fact that no prison official ever responded with an answer to Mr. Reid's standard grievance. *See Dole*, 438 F.3d at 809; *see also Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA 'so narrowly as to … permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'") (second and third alterations in original) (quoting *Goodman v. Carter*, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)). Without that response, no further administrative avenue was opened to Mr. Reid.

## Conclusion

The prison's communications with Mr. Reid so obscured the administrative process that it became unknowable and, thus, unavailable to him. Therefore, having concluded that Mr. Reid satisfied the exhaustion requirement under the Prison Litigation Reform Act, we VACATE the judgment and REMAND for additional proceedings.

VACATED and REMANDED