In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 21-2910
GERALD HACKER,
 Plaintiff-Appellant,
 v.

THOMAS J. DART, Sheriff of Cook County, et al.,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 17-cv-4282 — Steven Charles Seeger, Judge.
 ____________________

 ARGUED SEPTEMBER 9, 2022 — DECIDED MARCH 16, 2023
 ____________________

 Before ROVNER, HAMILTON, and SCUDDER, Circuit Judges.
 SCUDDER, Circuit Judge. Gerald Hacker is almost entirely
deaf. He has no hearing in his left ear and only 10% remaining
in his right. While incarcerated at the Cook County Jail in
2017, he filed four grievances related to his hearing impair-
ment, only then to sue the Sheriff of Cook County, Cook
County itself, and various other officials at the Cook County
Jail. The district court entered summary judgment for the de-
fendants, reasoning that Hacker failed both to exhaust his
2 No. 21-2910

claims under the Prison Litigation Reform Act and to comply
with other requirements imposed by the statute. We agree
with parts, but not all, of the district court’s analysis.
 I
 The Prison Litigation Reform Act bars prisoners from
bringing federal claims challenging prison conditions, includ-
ing medical care, “until such administrative remedies as are
available are exhausted.” 42 U.S.C. § 1997e(a). Prisoners must
comply strictly with the prison’s own rules and processes
governing grievances to satisfy this exhaustion requirement.
See Reid v. Balota, 962 F.3d 325, 329 (7th Cir. 2020). If the insti-
tution provides an administrative appeals process, prisoners
must exhaust that process too. See id. Exhaustion is an affirm-
ative defense, which means prison officials bear the burden of
showing that a prisoner failed to exhaust administrative rem-
edies. See id.
 Congress made clear in § 1997e(a) that prisoners only have
to exhaust available remedies, not remedies that are unavail-
able. 42 U.S.C. § 1997e(a). An administrative remedy is not
“unavailable” if it is merely confusing or ambiguous. See Ross
v. Blake, 578 U.S. 632, 644 (2016). But when a remedy is so
opaque that it becomes “essentially ‘unknowable,’” then pris-
oners are no longer required to exhaust. Id. at 643–44 (quoting
Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007)). In
our recent cases addressing the PLRA’s exhaustion require-
ment, we have stressed that prisons should create under-
standable grievance procedures, ones clear and transparent
enough to allow ordinary inmates to navigate them. See Reid,
962 F.3d at 330 (citing Williams v. Wexford Health Sources, Inc.,
957 F.3d 828, 834 (7th Cir. 2020)).
No. 21-2910 3

 The PLRA also establishes limits on recovery for mental or
emotional injuries. Prisoners must make a “prior showing” of
physical injury or the commission of a sexual act before recov-
ering for these injuries. 42 U.S.C. § 1997e(e). But this limitation
applies only to compensatory damages—not nominal dam-
ages, punitive damages, or injunctive relief. See Thomas v. Illi-
nois, 697 F.3d 612, 614 (7th Cir. 2012). Certain dignitary harms,
like violations of particular constitutional rights, are also not
subject to the physical injury requirement. See Rowe v. Shake,
196 F.3d 778, 781–82 (7th Cir. 1999) (holding that a First
Amendment violation, by itself, is distinct from an emotional
or mental injury). To satisfy § 1997e(e), prisoners must show
an injury that is more than negligible although not necessarily
significant. See, e.g., Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir.
2003); Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Oliver
v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).
 II
 We now turn to applying this framework to each of
Hacker’s claims. And we describe those claims by construing
the facts from the summary judgment record in the light most
favorable to Hacker. See Reid, 962 F.3d at 327. What transpired
here is messy and detailed. An extra ounce or two of patience
will make it easier to see the analysis come together around
each of the contentions Hacker presses on appeal.
 A
 We start with a claim that Hacker brought under 42 U.S.C.
§ 1983 against Officer D. Sandoval for using unreasonable
force against him within the Cook County Jail.
 On March 28, 2017, Officer Sandoval encountered Hacker
standing in a doorway and ordered him to return to his bed,
4 No. 21-2910

but Hacker—unable to hear—did not comply. Officer Sando-
val responded by shoving Hacker, knocking him uncon-
scious. Hacker later awoke at Cermak Health Services, hand-
cuffed to a bed. He responded to the incident by filing an ad-
ministrative grievance with the jail.
 Later that same day, Hacker received a written notice that
his grievance had been referred for investigation to the Office
of Professional Responsibility and the Divisional Superinten-
dent. The referral was no surprise. The Cook County Jail had
a policy of referring to OPR all grievances involving staff mis-
conduct. The notice further informed Hacker that he could
follow up on the investigation by contacting OPR directly or
requesting to speak with the Divisional Superintendent.
 Attached to the OPR referral notice was a form allowing
Hacker to appeal within 15 days. The form included standard
language warning Hacker that he had to appeal the prison’s
response to exhaust his remedies. The jail had also given
Hacker an Inmate Handbook, which reiterated the general ap-
peals requirement. To be sure, though, neither the handbook
nor the jail’s response told Hacker what to do, if anything,
when the written response only informed him that his com-
plaint about Officer Sandoval had been referred to OPR. And
neither document gave any timeline for OPR or the Divisional
Superintendent’s disposition of Hacker’s grievance.
 More than three months later—well after the 15 days to
appeal the referral had lapsed—an OPR investigator issued a
memorandum concluding he could not substantiate Hacker’s
claims against Officer Sandoval and recommending that OPR
close the investigation. The investigator addressed the mem-
orandum to his superior officer, who signed at the bottom to
approve the closure of the referral.
No. 21-2910 5

 The defendants tell us that Hacker received a copy of this
closure memorandum. Perhaps. Regardless, no part of the
document speaks directly to Hacker or clearly states that the
grievance process as a whole—including the Divisional Su-
perintendent’s review—had come to its end. The memoran-
dum also makes no mention of an appeals process and did not
attach a second appeals form. And the record does not show
that Hacker ever received any communication from the Divi-
sional Superintendent.
 Hacker never returned the original appeals form in re-
sponse to either the referral or the OPR memorandum. By the
time OPR closed its investigation, he had already sued in fed-
eral court.
 B
 We begin by observing that Hacker’s arguments have
evolved since summary judgment. In its motion for summary
judgment, the Cook County Jail invoked the PLRA’s exhaus-
tion requirement and argued that Hacker had fallen short by
failing to appeal the OPR referral notice within 15 days of re-
ceiving the form. For his part, Hacker thought that he had no
obligation to appeal—largely because there was nothing in
the referral notice that was worth challenging. Hacker’s con-
cerns with the OPR process overlapped in substantial part
with the issue of whether the OPR process was so cryptic and
confusing to be unavailable to him. But he did not develop his
position in those terms.
 The district court rejected the jail’s 15-day deadline to ap-
peal. As the court saw it, the referral allowed Hacker to delay
his appeal until he heard back from OPR. But he was still
6 No. 21-2910

required to appeal at some point. So the district court dis-
missed the § 1983 claim for failure to exhaust.
 In his opening brief on appeal, Hacker contended that the
district court had not made the factual findings necessary to
support its position. But Hacker nowhere mentioned his prior
argument that there was nothing for him to appeal in the re-
ferral notice. Nor did he argue that the OPR process was un-
knowable or otherwise unavailable to him. Instead, Hacker
waited until filing his reply brief to articulate and develop this
argument—that the grievance system was so opaque and con-
fusing as to be unavailable to him—for the first time.
 We require litigants to raise and develop all of their argu-
ments in their opening appellate brief to ensure “that the op-
posing party has an opportunity to reflect upon and respond
in writing to the arguments that his adversary is raising.”
Berkman v. Vanihel, 33 F.4th 937, 947 n.45 (7th Cir. 2022) (quot-
ing Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316,
1319 (11th Cir. 2012)). By failing to advance his contention that
the grievance process was unavailable until his reply brief,
Hacker forfeited the position. See id.
 Ordinarily, we will not consider arguments forfeited by a
civil litigant. See Henry v. Hulett, 969 F.3d 769, 786 (7th Cir.
2020) (en banc). Our “underlying concern is to ensure that the
opposing party is not prejudiced by being denied sufficient
notice to respond to an argument.” Id. at 785 (quoting Hernan-
dez v. Cook County Sheriff's Office, 634 F.3d 906, 913 (7th Cir.
2011)). But we may review a forfeited argument for plain er-
ror in the infrequent case where “(1) exceptional circum-
stances exist; (2) substantial rights are affected; and (3) a mis-
carriage of justice will occur if plain error review is not ap-
plied.” Id. at 786 (quoting Thorncreek Apartments III, LLC v.
No. 21-2910 7

Mick, 886 F.3d 626, 636 (7th Cir. 2018)). These criteria do not
apply mechanically—rather, the “matter of what questions
may be taken up and resolved for the first time on appeal is
one left primarily to [our] discretion.” Singleton v. Wulff, 428
U.S. 106, 121 (1976).
 This is one of those rare issues that we will consider—and
resolve in Hacker’s favor—for the first time on appeal. First,
Hacker has identified a plain error. Start with the notice in-
forming Hacker of the referral of his complaint to OPR. With-
out clear instruction, Hacker could not have known he was
supposed to appeal that decision. The referral did not indicate
that OPR’s involvement would lead to a negative disposition
of the underlying grievance or rule out other remedial steps
in the future. Indeed, the clear and sensible takeaway from
the notice was that Hacker should stand by while OPR inves-
tigated his complaint against Officer Sandoval.
 Do not lose sight of the bigger picture either. The notice of
OPR’s referral told Hacker next to nothing, for OPR’s respon-
sibility included investigating allegations of guard abuse. So
anyone receiving the notice of referral would have reacted by
thinking the process was working and moving forward as it
should—not by concluding there was anything to appeal. We
can come up with no reason why Hacker would contest the
jail’s (correct) characterization of his grievance as a staff mis-
conduct issue. Put simply, no ordinary prisoner would think
to appeal an update that the jail was following its own rules.
 The defendants told us at oral argument that Hacker
should have appealed because the jail had failed to take other
steps in response to the grievance, like allowing him to press
charges against Officer Sandoval. But the defendants could
not explain why Hacker would believe the referral ruled out
8 No. 21-2910

these other steps being taken in the future, much less that he
should appeal immediately to register his objection.
 Nor did the Cook County Jail tell Hacker to appeal after
OPR made its final decision. Recall that the jail had not pro-
vided so much as a rough timeline for how long OPR (or the
Divisional Superintendent) would take to complete its inves-
tigation. If Hacker believed he needed to hear from either or
both entities before suing, he would have resigned himself to
an indefinite wait—and might have continued to wait even
after OPR closed its investigation. It is unclear why Hacker
would have known this wait was required. And in any case,
the jail suggested that the OPR process operated separately
and apart from formal grievance channels by telling Hacker
to “follow up” on the investigation by contacting OPR or the
Divisional Superintendent directly.
 OPR’s closing memorandum reinforced that message.
Hacker now suggests that he did not receive this memoran-
dum, but we do not need to resolve that factual dispute. The
OPR process is unknowable regardless of whether Hacker re-
ceived the closing memorandum, as that document made no
reference to appealing or otherwise responding to its deci-
sion. Indeed, the only appeals form that the jail had sent to
Hacker was attached to a different document (the notice of
referral) and had apparently expired long before OPR closed
the investigation. All of this suggested to Hacker that there
was nothing left for him to do.
 In light of these communications, we have little trouble
concluding that the Cook County Jail’s grievance procedures
became unavailable to Hacker after the jail involved OPR.
Consider what happened from the vantage point of an ordi-
nary prisoner standing in Hacker’s shoes: while the jail
No. 21-2910 9

allowed him to appeal within 15 days of receiving the notice
of referral, there was no reason for him to do so. And although
Hacker had reason to appeal OPR’s final disposition, the jail
consistently suggested that he was not supposed to. This mes-
saging “so obscured the process that there was no conceivable
next step for [Hacker] to take,” Reid, 962 F.3d at 330, forcing
Hacker to “go beyond the established system and guess”
what he needed to do, Williams, 957 F.3d at 834.
 Second, the circumstances of Hacker’s case are exceptional
because of the consequences for Hacker and for others.
Hacker—and other prisoners at the Cook County Jail—faced
a labyrinthine and confusing process in circumstances where,
as here, the jail referred grievances against correctional offic-
ers to OPR. Truth be told, we have a difficult time under-
standing the process ourselves. Not even the defendants
could offer us a meaningful defense of that process at oral ar-
gument. That confusion carries significant implications for
civil litigants who, like Hacker, risk being locked out of court
entirely for some of the most serious claims they could bring.
We apply plain error review more readily in cases like these,
where we can resolve issues of great significance for other
parties. See CNH Indus. Am. LLC v. Jones Lang LaSalle Ams.,
Inc., 882 F.3d 692, 705 (7th Cir. 2018) (considering whether the
forfeited issue “has the potential to affect large numbers of
people beyond the parties to this case”).
 Exercising our discretion to review Hacker’s claims has
the added and important benefit of allowing us to provide
much-needed guidance to the district courts. See Humphries v.
CBOCS West, Inc., 474 F.3d 387, 391 (7th Cir. 2007). For years
now, district courts struggling to understand the OPR process
have come to conflicting conclusions. See Johnson v. Cook
10 No. 21-2910

County Jail, Nos. 14-c-0007, 14-c-0028, 2015 WL 2149468, at *3–
4 (N.D. Ill. May 6, 2015) (finding a prisoner must appeal the
referral to OPR, and the deadline is not tolled); Crayton v.
Graffeo, 10 F. Supp. 3d 888, 895 (N.D. Ill. 2014) (finding a pris-
oner does not need to appeal before receiving the disposition
of the OPR investigation); Smith v. Cook County, No. 14-c-1789,
2017 WL 3278914, at *6 (N.D. Ill. Aug. 2, 2017) (reaching the
same result as Crayton); Jackson v. Dart, No. 13-c-7713, 2016
WL 5390954, at *3 (N.D. Ill. Sept. 27, 2016) (reaching the same
result as Smith and Crayton). The lower courts’ frustration is
palpable. See Jackson, 2016 WL 5390954, at *3 (“It defies com-
mon sense to read that response [notifying the prisoner that
OPR is handling his grievance] as negative action on his griev-
ance, such that an appeal was appropriate.”).
 There is no better time than now to clarify the issue for all
involved—first and foremost prisoners, but also prison offi-
cials, the Sheriff of the Cook County Jail, and the district
courts. See Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746, 750
(7th Cir. 1993). The underlying concern behind forfeiture is
the risk that reviewing a forfeited argument will prejudice
others, most of all the opposing party. But in this instance, we
have a developed record: the parties have provided us with
the Inmate Handbook that Hacker received, the notice of re-
ferral to OPR, the attached appeals form, and the memoran-
dum between OPR officers closing the investigation. See Jack-
son v. Parker, 627 F.3d 634, 640 (7th Cir. 2010) (considering
whether the record is adequately developed to review a for-
feited argument). All sides agree on the critical facts. And the
defendants aggressively litigated the core problem of what
the grievance process required and what notice of these re-
quirements Hacker received—a problem the district court
managed to tackle on this record as well. Reviewing Hacker’s
No. 21-2910 11

argument under these circumstances will not cause harm to
the defendants or anyone else.
 Third, substantial rights are at stake. This dimension of the
plain error inquiry asks whether the alleged error prejudiced
the forfeiting party. See Perry v. City of Chicago, 733 F.3d 248,
253 (7th Cir. 2013) (considering whether the error impacted
the forfeiting party’s “right to a fair trial”). The error in this
case prejudiced Hacker because the only basis for dismissing
his claim against Officer Sandoval was his apparent failure to
exhaust by not appealing the referral to OPR or OPR’s later
closure of its investigation. Had Hacker raised this argument
before the district court and won, his claim (that Officer Sand-
oval had used enough force against him to knock him uncon-
scious and send him to the hospital) would have survived
summary judgment.
 Fourth, a miscarriage of justice looms if we do not apply
plain error review. The Cook County Jail’s grievance process
was not just a confusing annoyance. It was an incomprehen-
sible trap that risked locking Hacker—and potentially other
inmates as well—out of court altogether on serious claims. See
Henry, 969 F.3d at 787 (considering whether the forfeiting
party remained able to raise the same argument later in the
proceedings despite the forfeiture). No doubt Hacker should
have raised the availability issue sooner. But in the totality of
the circumstances before us, we conclude it is “in the interests
of justice” to address the issue now. Humphries v. CBOCS
West, Inc., 474 F.3d 387, 391 (7th Cir. 2007).
 No one is better positioned to amend its grievance proce-
dures than the Cook County Jail itself. Perhaps it already has,
although it has not told us so. But our focus is on the hope-
lessly confusing process in place when Hacker filed his
12 No. 21-2910

grievance against Officer Sandoval in 2017. We have stressed
that grievance procedures should be transparent enough for
ordinary prisoners to navigate. The OPR process that Hacker
faced, which implicated some of the most serious grievances
at the Cook County Jail, fell well short of that measure. The
PLRA therefore did not require Hacker to exhaust the griev-
ance process for his § 1983 claim before suing in federal court.
 III
 We turn now to a separate exhaustion issue under the
PLRA involving a different one of Hacker’s claims. Hacker
brought this claim under the ADA and Rehabilitation Act to
challenge the Cook County Jail’s provision of medication. The
claim involved two different grievances that Hacker filed, one
that makes no mention of medications (but was filed and ex-
hausted on time) and another that discusses medication (but
was filed too late to satisfy the PLRA’s exhaustion require-
ment).
 Hacker filed the first grievance in May 2017. He made no
mention that he was not receiving medications and instead
complained that he lacked access to assistive listening de-
vices, which the parties refer to as ALDs. The parties dispute
how much listening devices help Hacker, but he says that
without them he cannot hear and understand what others are
saying to him—a disability that becomes a major problem for
an incarcerated person subject to all sorts of direction from
prison guards. At the Cook County Jail, however, Hacker had
access to listening devices only when he attended drug pro-
grams and court hearings. These circumstances led him to
submit a one-sentence grievance complaining that the jail had
not provided him “with [an] available hearing device to ac-
commodate [his] disability in violation of [the] A.D.A.” The
No. 21-2910 13

jail responded by telling Hacker that the ADA did not require
furnishing him with a personal listening device. Hacker ap-
pealed. The jail then denied his appeal, fully exhausting the
grievance process.
 Meanwhile, Hacker was experiencing periodic issues with
receiving medication within the jail. Medical staff dispensed
medications by taking the medicine to units within the jail
and then calling prisoners up by name. But Hacker could not
always hear staff calling his name. These issues came to a
head when Hacker suffered a dental abscess and did not re-
ceive his antibiotics and pain medications on multiple occa-
sions. He says that missing the medications left him in pain
and delayed his tooth extraction for months. Hacker’s dentist
reported needing to reorder multiple courses of antibiotics,
something she later stated “[y]ou do not want to [do] if you
can help it.”
 Hacker responded by submitting a grievance in July 2017,
after he had already filed this lawsuit in federal court. Unlike
the prior listening device grievance, Hacker discussed his
problems with medications in detail in the second grievance.
The Cook County Jail sent the grievance to Cermak Health
Services, the entity that managed health care within the insti-
tution. Cermak reviewed Hacker’s medical records and con-
cluded his complaint lacked merit. But Hacker did not learn
of Cermak’s denial until October 2017. He appealed soon af-
ter, and Cermak denied his appeal in December 2017.
 A prisoner must exhaust their claims before commencing
litigation. See 42 U.S.C. § 1997e(a). Hacker acknowledged that
the medication-related grievance from July 2017—filed and
exhausted after Hacker had sued—came too late. But he be-
lieved his prior grievance—the one from May 2017 about the
14 No. 21-2910

listening devices, which he fully exhausted before filing
suit—had effectively put the jail on notice that Hacker would
not be able to get his medications. The district court disagreed
and dismissed the claim about medication access.
 The district court got this right. We ordinarily leave griev-
ance requirements to prisons and review for strict compliance
with the rules they develop. See Dole v. Chandler, 438 F.3d 804,
809 (7th Cir. 2006). In this case, however, the defendants opted
not to focus on whether Hacker complied with the jail’s rules
and instead invoked the underlying purpose of the exhaus-
tion requirement. That purpose is to “afford[ ] corrections of-
ficials time and opportunity to address complaints internally
before allowing the initiation of a federal case.” Porter v.
Nussle, 534 U.S. 516, 525 (2002). We have therefore said that
the exhaustion requirement “serve[s] its function” if it pro-
vides “prison officials a fair opportunity to address [a pris-
oner’s] complaint.” Maddox v. Love, 655 F.3d 709, 713 (7th Cir.
2011).
 We cannot say that Hacker’s May 2017 grievance challeng-
ing his access to listening devices afforded jail officials a fair
opportunity to respond to his concern about not receiving
medications. The grievance identified the remedy Hacker
wanted—a personal listening device. But Hacker never de-
scribed or alluded to any problems with receiving medica-
tion, access to Cermak Health’s medical services, or access to
prison services more generally. Without that link, prison offi-
cials did not have fair notice that Hacker wanted the personal
listening device because he could not hear medical staff call-
ing out his name while dispensing medication. Because the
grievance did not put prison officials on notice about the med-
ication issues, we do not need to address the Sheriff’s
No. 21-2910 15

contention that Hacker should have sent his grievance to
Cermak Health and not to the Cook County Jail.
 IV
 Hacker’s claim about his access to medications was not the
only one that he brought under the ADA and Rehabilitation
Act. He also invoked those statutes to challenge his limited
access to listening devices and his limited access to a special
telephone for the hearing impaired. Focusing on those two
other claims, we now look at whether Hacker satisfied an-
other PLRA requirement—that a prisoner makes a “prior
showing of physical injury or the commission of a sexual act”
before recovering compensatory damages for “mental or
emotional injury.” 42 U.S.C. § 1997e(e).
 A
 We start with the claim that Hacker brought to challenge
his limited access to listening devices at the Cook County Jail.
While the substance of this claim overlaps significantly with
the claim challenging Hacker’s limited access to medications,
the two are distinct. Hacker also fully exhausted his claim
about listening devices with his May 2017 grievance, which
specifically requested a listening device.
 Hacker had requested compensatory damages and injunc-
tive relief for this claim, but not nominal or punitive damages.
The request for injunctive relief had become moot by sum-
mary judgment because Hacker had left the Cook County Jail.
That left only compensatory damages, which Hacker sought
for his stress, discomfort, and exhaustion. Because these
symptoms describe mental or emotional injuries, they were
subject to the PLRA’s physical injury requirement.
16 No. 21-2910

 The defendants argued in the district court that Hacker
had not connected a physical injury to the listening devices
claim and thus could not recover anything. After Hacker
failed to respond directly in his summary judgment briefing,
the district court agreed with the defendants and dismissed
this claim as well.
 We see things differently than the district court. Remem-
ber that Hacker had complained about missing pain medica-
tions and antibiotics to treat his abscessed tooth because he
could not hear his name being called during medication
passes. And Hacker made clear that missing the medications
resulted in the tooth extraction being delayed for months.
This allegation suffices to allege physical injury for purposes
of the PLRA—a dental abscess is a “serious medical condition
requiring prompt treatment.” Dobbey v. Mitchell-Lawshea, 806
F.3d 938, 940 (7th Cir. 2015).
 Hacker also sufficiently linked his alleged physical injury
to his claim involving listening devices. He suggested at sum-
mary judgment that he experienced the dental abscess injury
because of the Sheriff’s failure to provide accommodations—
including, presumably, the denial of a personal listening de-
vice—when he complained he was “treated unequally be-
cause he did not have an [assisted listening device] when
communicating with providers and was not accommodated
during periods when he required antibiotics prior to the ex-
traction of an abscessed tooth.” Hacker also laid the blame
squarely on the Sheriff’s office by claiming “the Jail” was re-
sponsible for denying him a listening device.
 Summary judgment requires viewing the facts in the light
most favorable to Hacker, the non-movant. See Reid, 962 F.3d
at 327. In that light, we see an adequate causal link between
No. 21-2910 17

the listening device claim and the dental injury: without a per-
sonal listening device, Hacker could not hear medical staff
call his name and therefore missed his medications for the
dental abscess. He has done enough with this claim to survive
summary judgment.
 B
 That brings us to Hacker’s final claim and the question of
whether he adequately alleged a physical injury in connection
with that claim. Once again invoking the ADA and Rehabili-
tation Act, Hacker complained of inadequate access to a spe-
cial telephone for the hearing impaired, known as a teletype
phone. Other inmates enjoyed daily access to phones in their
living units. Hacker, by contrast, had to submit a request form
to use a teletype phone. The parties dispute just how fre-
quently Hacker was able to make calls using a teletype phone.
But whatever that access was, Hacker alleged it was insuffi-
cient. He filed a grievance in May 2017 complaining about the
limited phone access and appealed when jail offices rejected
his complaint.
 Like the listening device claim, the defendants persuaded
the district court that the damages Hacker sought were una-
vailable because he had not shown a physical injury. Hacker
altogether failed to respond before the district court. In these
circumstances, he forfeited the claim, leaving us to review
only for plain error. See Henry, 969 F.3d at 786.
 Here, we agree with the district court. Unlike the listening
device claim, Hacker never connected the issues with teletype
phones to his physical injuries from the dental abscess or the
alleged assault by Officer Sandoval. That left him with no
showing of physical injury under the PLRA.
18 No. 21-2910

 Absent that showing, Hacker cannot recover compensa-
tory damages for mental or emotional injuries. Yet the only
relief Hacker sought was just that—damages for mental and
emotional injuries. He never sought nominal or punitive
damages, and his request for injunctive relief was moot by
summary judgment. What remained were compensatory
damages, which Hacker characterized as mental or emotional
in nature before the district court: he said that he was stressed,
exhausted, and uncomfortable when he could not communi-
cate with others.
 Hacker repeats that characterization on appeal, telling us
his damages are compensable under the ADA as “inconven-
ience” and “loss of enjoyment of life.” We do not see any way
to interpret these damages other than as compensation for
harm to Hacker’s mental or emotional health. Loss of enjoy-
ment of life describes an injury to Hacker’s mental well-being.
When Hacker says he should be able to recover damages for
inconvenience, he is looking to be compensated for the stress
or emotional pain of being deprived of teletype phones—a
harm that is also mental or emotional. The district court
properly entered summary judgment for the defendants on
Hacker’s teletype phone claim.
 For his part, Hacker thinks the compensatory damages he
seeks fall entirely outside the PLRA’s physical injury provi-
sion. He urges this conclusion by relying on our decisions in
Robinson v. Page, 170 F.3d 747 (7th Cir. 1999), and Cassidy v.
Indiana Department of Corrections, 199 F.3d 374 (7th Cir. 2000).
 In Robinson, we explained that a future risk of physical
harm, like the risk posed by a prisoner’s exposure to lead con-
taminants, was not a mental or emotional injury and hence
was not subject to the physical injury requirement. 170 F.3d at
No. 21-2910 19

749. We went a step further in Cassidy. We allowed a prisoner
with no physical injury to pursue damages for certain discrete
harms, including loss of access to programs and activities in
the prison. 199 F.3d at 375–77. But Cassidy still barred the pris-
oner from pursuing damages for emotional and mental harm
that resulted from his inability to participate in those activi-
ties. See id. at 376–77. Hacker believes that much like Robinson
and Cassidy, the damages he requested on this telephone
claim are not for mental or emotional injuries and hence are
not subject to the PLRA’s physical injury requirement.
 We are not convinced. Robinson addressed the narrow is-
sue of future harm that is purely physical. Hacker, by con-
trast, described his own damages in terms of his present emo-
tional and mental well-being. As for Cassidy, we permitted the
prisoner there to pursue damages only insofar as they were
separate from damages for the mental or emotional harms of
being denied access to prison programming. But in telling us
that his damages are compensable because they caused him to
experience inconvenience and loss of enjoyment of life,
Hacker made clear that he was seeking exactly what we had
barred the plaintiff from recovering in Cassidy: damages for
“emotional and mental harm, embarrassment, and humilia-
tion resulting from not being able to pursue the same activi-
ties as the non-disabled.” Id. at 375.
 Hacker suggests that if nothing else, he should be allowed
to pursue nominal damages, which are not subject to the
PLRA’s physical injury provision. (Punitive damages are un-
available for Hacker’s ADA and Rehabilitation Act claims.
See Barnes v. Gorman, 536 U.S. 181, 189–90 (2002).) Hacker be-
lieves he is free to pursue nominal damages despite not re-
questing them in his complaint.
20 No. 21-2910

 We find no plain error in the district court’s treatment of
this claim. Such a claim for nominal damages can present
some challenging legal issues, including whether Congress
authorized them under the ADA or the Rehabilitation Act, as
well as other questions left unanswered by the Supreme
Court’s holding on Article III standing in Uzuegbunam v. Prec-
zewski, 141 S. Ct. 792 (2021). We also doubt that a district court
is required to assume that a plaintiff wants to pursue only
nominal damages if the plaintiff has not indicated as much.
Applying the plain-error standard to Hacker’s claims for lim-
ited access to the teletype phone, we are not persuaded that
there was an error, let alone a plain one. Neither are we per-
suaded that any error affected Hacker’s substantial rights or
resulted in a miscarriage of justice. Like the district court, we
therefore conclude that Hacker has nothing to recover on this
claim.
 * * *
 For these reasons, we VACATE the entry of summary
judgment for the defendants and REMAND for further pro-
ceedings.